IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION

| | | |
|---|---|---|
| KATHY LYNETTE MILES | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | NO: 4:08CV02801 SWW |
| | * | |
| BG EXCELSIOR LIMITED | * | |
| PARTNERSHIP D/B/A THE | * | |
| PEABODY LITTLE ROCK, ET AL. | * | |
| | * | |
| Defendants | * | |
| | * | |
| | * | |
| | * | |

## ORDER

Plaintiff Kathy L. Miles ("Miles") brings this employment discrimination case pursuant to Title VII of the 1964 Civil Rights Act against her former employer, BG Excelsior Limited Partnership d/b/a the Peabody Little Rock ("the Peabody").[1]  Miles also brings supplemental claims under the Arkansas Civil Rights Act.  Before the Court is the Peabody's motion for summary judgment (docket entries #54, #55, #56); Miles's response in opposition (docket entries #66, #67); and the Peabody's replies (docket entries #72, #79).  After careful consideration, and for reasons that follow, the Court finds that the motion for summary judgment should be granted.

---

[1] Miles also names defendants BEX, Inc. d/b/a Peabody Little Rock and BHMG LLC d/b/a the Peabody Little Rock, alleging that these entities also employed her.  Because the Court finds no genuine issues for trial with respect to Miles's substantive claims, the Court will not address whether these additional defendants served as her employers.

**I**.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

**II**.

The following facts are undisputed. On March 19, 2007, the Peabody hired Miles, an African-American female, to work at the Peabody Hotel in Little Rock. Upon Miles's hire, a human resource employee named Alicia Berry ("Berry") expressed concern about Miles's hair color, which was blonde. Miles testifies that Berry instructed her to wear a wig to an employee orientation meeting because "the executives" would not approve. *See* docket entry #66, Ex. I

(Miles Dep.), at 75.  Reluctantly, Miles wore a wig to employee orientation, but after the meeting, human resource representatives informed her that she would not be required to change her hair color or wear a wig in the future.  Miles's hair remained blonde the entire time she worked for the Peabody.

After attending employee orientation, Miles worked as a seamstress in the hotel's housekeeping department, and James Mason ("Mason"), the laundry manager, served as her supervisor.  Only one other employee, Heather Robertson, worked as a seamstress.  According to Miles, Mason discriminated against her by giving Robertson favorable treatment, and he harassed her with derogatory remarks about her hair and jokes about African Americans.

During her employment at the Peabody, Miles made several complaints about Mason:

- In June 2007, Miles complained to the Peabody's human resource director, June Oppedisano, that Mason was "picking" on her. Docket entry #54, Ex. #C (Oppedisano Dec., ¶4).

- During the summer of 2007, Miles complained to the Peabody's assistant rooms director, Anke Hollman ("Hollman"), that she had worked ten consecutive days and needed a day off. *See* Miles Dep. at 105, 111-113. Hollman granted Miles's request. *Id*. Miles also complained to the Peabody's general manager, Gregg Herning ("Herning"), that she had been scheduled to work nine consecutive days. Herning instructed the Peabody's rooms director, Trent Freeman ("Freeman"), to "look into the issue and correct any scheduling problems." Docket entry #54, Ex. E (Herning Dec. at ¶5).

- In September 2007, Miles complained to Herning that Mason watched her too closely and made her uncomfortable and nervous. *See* Herning Dec., Attached Statement. Also in September 2007, Miles complained to Freeman that Mason sang the theme song from *the Jeffersons*, a television sitcom featuring a black family, and made a comment that the housekeeping department uniforms were similar to the uniform worn by Florence, a character from *the Jeffersons* who worked as a maid. *See* docket entry #54, Ex. #3 (Freeman Dec., ¶5).

After Miles complained about Mason in September 2007, Hollman ended Mason's supervisory duties over Miles and assigned Chad Rhodes, the assistant director of housekeeping, to serve as her supervisor. Miles claims that despite Hollman's action, Mason continued to prepare her work schedule. Miles testifies that she reported to work on Friday, October 5, 2007 and noticed that her name did not appear on the schedule. *See* Miles Dep. at 49. Miles further testifies that she notified Rhodes that her name was missing from the schedule, and she asked him whether she had been fired. *Id*. According to Miles, Rhodes responded that she had not been fired, and he stated: "You got to be kidding. Your name is on the schedule." *Id*.

By letter dated October 5, 2007, Miles submitted the following letter of resignation:

> I Kathy Miles am giving my notice to resign from my position here at the Peabody Hotel in Little Rock. Due to unpleasant reasons, that I will not go into in this letter, I am forced to leave. My health has declined severely since I have started working here. I begin my 1st day of a 10 day notice today. Other then my health and unpleasant dealings, I would like to thank those of you who have been good to me. God bless all. Sincerely and thank you.

Docket entry #54, Ex. A, Part 2, Ex. #7. After Miles submitted her letter of resignation, Hollmon attempted to convince her to stay and offered to transfer her to another department, but Miles declined Hollman's offer. Hollman Dec., ¶ 5.

After filing a discrimination charge with the Equal Employment Opportunity Commission and receiving a right-to-sue letter, Miles commenced this lawsuit, charging that the Peabody discriminated against her in terms of pay and promotions, retaliated against her, and subjected her to hostile work environment, which resulted in her constructive discharge.

### III.

**Disparate Treatment**

In her amended complaint, Miles claims that the Peabody discriminated against her based on race by treating similarly situated co-workers more favorably with respect to pay and promotions. To establish discrimination based on disparate treatment, Miles shoulders the burden to show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination. Because Miles presents no evidence that directly points to the presence of a discriminatory motive, the Court will analyze her disparate treatment claims under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).

Under the *McDonnell Douglas* framework, Miles must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered adverse employment action; and (4) similarly situated employees that were not members of her protected class were treated differently. *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). Under the fourth element, Miles "bears the burden to proffer 'specific, tangible evidence' that employees who were 'similarly situated in all respects' to [her] received different treatment from [the Peabody]." *Id*. (quoting *Rose-Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1109 n. 4 (8th Cir.1998) (first internal quote); *Gilmore v. AT&T,* 319 F.3d 1042, 1046 (8th Cir. 2003) (second internal quote)).

Regarding Miles's pay, she received $9 per hour, $2 more than the Peabody's normal rate for newly-hired seamstresses. Additionally, it is undisputed that Miles worked for the Peabody for less than a year and that upon her hire, she signed a form acknowledging that she would be eligible for a raise after 12 months of service. However, Miles claims that the day she was hired, the hotel director told her that she would be eligible for a dollar raise after only 90

days. Miles claims that the Peabody discriminated against her by failing to give her a dollar raise as promised and giving the same to her white co-worker, Heather Robertson.

The Peabody asserts that Miles has failed to show that Robertson was similarly-situated to her in all relevant respects. Furthermore, the Peabody presents undisputed evidence that during the relevant time period, Robertson split her time between supervising housekeeping shifts and working as a seamstress. *See* docket entry #54, Ex. F (Mason Dep.) at 44-46. Miles, on the other hand, offers no evidence showing that she and Robertson were similarly situated with respect to their work assignments and duties. In sum, the Court agrees that Miles has failed to offer any evidence that she and Robertson were similarly situated in all relevant respects.

As for Miles's claim that the Peabody discriminated against her by failing to promote her, she offers no specific allegations and presents no evidence to support this claim. The Court finds no issues for trial with respect to Miles's disparate treatment claims.

### **Retaliation**

To establish a *prima facie* case of retaliation,[2] Miles must show that (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *See Stewart v. Independent School Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007).

Miles claims that after she complained about Mason, he retaliated against her by leaving

---

[2] Miles's retaliation claim pursuant to the Arkansas Civil Rights Act is analyzed according to the same framework applicable to her analogous claim under Title VII. *See Island v. Buena Vista Resort*, 352 Ark. 548, 103 S.W.3d 671, 676 (2003); *Flentje v. First Nat'l Bank*, 340 Ark. 563, 11 S.W.3d 531, 537 (2000); *see also Burkhart v. American Railcar Industries, Inc*., 603 F.3d 472, 477 (8th Cir. 2010)("We analyze Burkhart's Title VII and ACRA retaliation claims in the same manner.).

her name off of a work schedule. The Peabody argues, and the Court agrees, that Mason's failure to include Miles's name on a written work schedule on a single occasion does not amount to materially adverse employment action. *See Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 644 (8th Cir. 2009)(quoting *Gilbert v. Des Moines Area Cmty.*, 495 F.3d 906, 917 (8th Cir. 2007)("[T]o be materially adverse, retaliation cannot be trivial; it must produce some 'injury or harm.'"). The Court finds no genuine issues for trial on this claim.

### Hostile Work Environment

An employer creates an actionable hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). To hold an employer liable for a racially hostile work environment caused by the actions of a supervisor, the aggrieved employee must show: (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected-group status; and (4) the harassment affected a term, condition, or privilege of employment. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999).[3]

To be actionable, an allegedly hostile work environment must be both objectively and subjectively offensive--one that a reasonable person would find hostile or abusive, and one that

---

[3] With regard to claims of coworker harassment, a plaintiff must show that his employer knew or should have known of the harassment and failed to take appropriate remedial action. *See Joens v. John Morrell & Co.* 354 F.3d 938, 940 (8th Cir. 2004). Such proof is not necessary with regard to claims that supervisors committed harassment. An employer may be vicariously for an actionable hostile environment created by a supervisor with immediate, or successively higher, authority over the plaintiff. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65(1998). In this case, Miles alleges that her supervisor, James Mason, harassed her.

the victim in fact did perceive to be so.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283 (1998)(setting forth standards to evaluate claims of hostile work environment based upon sexual harassment); *see also Gipson v. KAS Snacktime Co*., 171 F.3d 574, 578 (8th Cir. 1999) ("The same standards are generally used to evaluate claims of hostile work environment based upon sexual harassment and racial harassment.").  In determining whether sufficient evidence of a hostile work environment has been presented, the totality of the circumstances must be considered, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance.  *See  Vajdl v. Mesabi Academy of KidsPeace, Inc*., 2007 WL 1201867, *3 (8th Cir. April 25, 2007)*(citing Duncan v. General Motors Corp*., 300 F.3d 928, 884 (8th Cir. 2002)).

     The Peabody asserts that Miles's hostile environment claim is subject to summary judgment because she cannot show that she endured harassment so severe or pervasive as to affect a term, condition, or privilege of her employment.   For reasons that follow, the Court agrees.

     Miles charges that her work environment at the Peabody was permeated with a discriminatory atmosphere, that the hotel carries a history of "Jim Crow laws and the image of African-American waiters and maids serving drinks and making up the beds for the more well-to-do members of the populace."  She contends that the Peabody's "southern history and tradition" is reflected in its hairstyle guidelines for female associates, which prohibit "extremes

in dyeing."[4]  Miles charges that the Peabody applies the guidelines in a discriminatory fashion by relegating African-American employees to the "back of the house" and  "allowing non-African American employees to bleach their hair blonde, but not permitting African-American employees to do the same, without suffering from discriminatory, hostile, and harassing comments and conduct."  Amend. Compl., ¶11.

According to Miles, she was permitted to work with blonde hair only because she worked "in the back of the house."  However, it is undisputed that Miles applied for the seamstress position for which she was hired, and there is no evidence that the Peabody attempted to hide her by placing her in a special, segregated work area.  In fact, Miles's own testimony indicates that she and Robertson, her white coworker, shared the same work area.  *See* Miles Dep. at 69.

Miles reports that when she attended employee orientation, she noticed a white female with a pink stripe in her hair.  According to Miles, the white employee, who she is unable to identify, continued to work at the hotel as a bartender with pink hair and was not required to work in an area out of the sight of customers.   However, Miles also testifies that at the Peabody's request, *she* occasionally worked as a bartender in order to earn extra money.  *See* Miles Dep. at 110.  In sum, Miles's charge that the Peabody attempted to hide her "in the back of

---

[4]The Peabody's hair guidelines for female associates states as follows:

> Females should keep their hair clean, neatly combed and free from excessive oils and gels. Extreme faddish styles should not be worn. Hair length and style should be appropriate to the job position. If an associate's hair is colored, care should be taken that the hair roots do not show in contrast to the color of the rest of the hair. Extremes in dyeing are not permitted. Hair scarves or elaborate styling are not allowed.

Docket entry #66, Ex. F.

the house" and applied hair guidelines in a discriminatory manner find no support in the record.

Miles also claims that she endured the following instances of harassing comments and conduct:

- Mason constantly nagged Miles and made derogatory comments about her hair. Miles reports that on one occasion, she wore a "wet look" hairstyle, and Mason commented: "What did you do to your hair? It's a hot mess. You need to fix your hair. This is not what is appropriate for you." Miles Dep. at 71.

- In June 2007, Mason was present on an occasion when Miles was helping housekeeping employees with new uniforms. Miles recalls that after the employees commented that the uniforms were old fashioned, Mason stated: "That uniform looks like–what's the lady's name on *The Jeffersons*?" Miles Dep. at 85. Miles responded, "Florence," and Mason stated, "Yeah, those are the right kind of uniforms for you guys." *Id.* Then, according to Miles, Mason stated, "I wonder if they ever got out of the ghetto," and he started singing the theme song from *The Jeffersons.*

- Miles witnessed Mason refer to African-American males as "boys" and African-American females "gals." Amend. Compl., ¶ 19.

- Miles overheard Mason, talking about a vandalism incident, state that "they were going to catch these 'black devils." Amend. Compl., ¶ 20.

As a threshold matter, "for conduct to be considered in a race-based hostile work environment claim, the conduct must 'have a racial character . . . .'" *Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 893 (8th Cir. 2005)(quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir.2004)). Without evidence that race was linked to Mason's "hot mess" comment or his alleged nagging, any connection between these incidents and Miles's race is purely speculative. *See Anderson v. Durham D & M, L.L.C.,* 606 F.3d 513, 519 (8th Cir. 2010)(finding that plaintiff offered "little more than speculation and conjecture" that supervisor's "nitpicking and ridicule" had anything to do with race).

Considered together, Mason's remarks about *the Jeffersons*, his alleged practice of referring to African-American males as boys, and his alleged comment about "black devils," while ill-chosen, simply do not support a finding that Miles endured severe, pervasive work conditions that a reasonable person would find hostile or abusive.  *See Canady v. Wal-Mart Stores, Inc*., 440 F.3d 1031, 1035 (8th Cir. 2006)(finding that supervisor's description of himself as a "slave driver" and uttering "what's up, my nigga" to a black employee did not give rise to an actionable claim of racial hostility).   The Court finds no genuine issues for trial regarding Miles's claim that the Peabody subjected her to a racially hostile environment.

**Constructive Discharge**

The Peabody asserts that Miles offers no evidence to support a constructive discharge claim.  "'Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit.'"  *Brenneman v. Famous Dave's of America, Inc*.,  507 F.3d 1139, 1144 (8th Cir. 2007)(quoting *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th  Cir. 2005)).  To prove constructive discharge, Miles must show that (1) a reasonable person in her situation would find the working conditions intolerable and (2) the Peabody intended to force her to quit or could have reasonably foreseen that she would quit as a result of its actions.  *Id*. (citations omitted).   Importantly, Miles's decision to resign must be reasonable in light of the circumstances--an employee has an obligation not to assume the worst, not to jump to conclusions too quickly, and must allow the "employer a reasonable opportunity to work out a problem." *Id*.

Miles contends that the combination of the alleged harassment she received from Mason

and the fact that she did not receive a raise forced her to resign.[5] Viewing the evidence in a light most favorable to Miles, and considering Hollman's offer to transfer her, the Court finds no reasonable person in Miles's position would have found her working conditions intolerable.

**IV**.

Finding no genuine issues for trial in this case, the Court finds that Defendants' motion for summary judgment (docket entry #54) should be and it is hereby GRANTED.  Pursuant to the judgment entered together with this order, this case is DISMISSED WITH PREJUDICE, and all remaining motions are DENIED AS MOOT.

IT IS SO ORDERED THIS 14TH DAY OF JANUARY, 2011.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[5]Miles testified as follows:

It wasn't just the raise. It was the mental abuse, the-- all of the harassment and all of that I was going through. I mean, if I would have known that would have happened, I would have asked probably for 20 bucks an hour to know what all I had detail to do. And I didn't think it was -- I actually showed Mr. Freeman a newspaper article where seamstress was getting up to 20 bucks an hour. All I asked for was a dollar more.

Docket entry #66, Ex. I (Miles Dep.) at 234.